# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| Judith Vecchitto, | |
| Plaintiff, | Civil No. 3:19-cv-00726-TOF |
| v. | |
| Andrew Saul, Commissioner of Social Security, | |
| Defendant. | August 13, 2020 |

## <u>RULING ON PENDING MOTIONS</u>

The Plaintiff, Judith Vecchitto, appeals the final decision of the Defendant, Andrew Saul, Commissioner of Social Security ("the Commissioner"), on her application for Title XVI Supplemental Security Income benefits.  This appeal is brought pursuant to 42 U.S.C. § 405(g).  Currently pending are the Plaintiff's motion to reverse and remand for an award and calculation of benefits, or in the alternative, for an order reversing and remanding for a new hearing (ECF No. 15), along with the Defendant's motion to affirm the decision of the Commissioner.  (ECF No. 17.)  For the reasons explained below, the Plaintiff's motion to reverse with an order for an award and calculation of benefits is **DENIED**, but her alternative motion to reverse and remand for a new hearing is **GRANTED**.  The Commissioner's motion to affirm is **DENIED**.  The Commissioner's decision is **VACATED** and **REMANDED** for proceedings consistent with this decision.

The Plaintiff raises several arguments on appeal.  The scope of this decision is limited, however, to her arguments arising out of the Administrative Law Judge's ("ALJ") failure to obtain opinions from her treating medical providers.  (ECF No. 15-1, at 11-12.)  The Commissioner argues, in substance, that this failure did not amount to a reversible failure to develop the record.

(ECF No. 17, at 9.)  The Court agrees with the Plaintiff that, under the facts of this case, the ALJ failed to develop the record by not obtaining treating source opinions.  The Court will therefore remand the case for rehearing, as discussed more fully in Section III below.

## I.     APPLICABLE LEGAL PRINCIPLES

To be considered disabled under the Social Security Act, "a claimant must establish an 'inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months.'" *Smith v. Berryhill*, 740 F. App'x 721, 722 (2d Cir. 2018) (summary order) (quoting 20 C.F.R. § 404.1505(a)).  To determine whether a claimant is disabled, the ALJ follows a familiar five-step evaluation process.

At Step One, the ALJ determines "whether the claimant is currently engaged in substantial gainful activity . . . ." *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing *Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008)).  At Step Two, the ALJ analyzes "whether the claimant has a severe impairment or combination of impairments . . . ." *Id.*  At Step Three, the ALJ evaluates whether the claimant's disability "meets or equals the severity" of one of the specified impairments listed in the regulations.  *Id.*  At Step Four, the ALJ uses a "residual functional capacity" assessment to determine whether the claimant can perform any of her "past relevant work . . . ." *Id*.  At Step Five, the ALJ assesses "whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience." *Id.*  The claimant bears the burden of proving her case at Steps One through Four.  *Id.*  At Step Five, "the burden shift[s] to the Commissioner to show there is other work that [the claimant] can perform." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 445 (2d Cir. 2012) (per curiam).

2

The Court's role is to determine whether the Commissioner's decision is supported by substantial evidence and free from legal error. "A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error." *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000) (internal quotation marks omitted). The decision is supported by substantial evidence if a "reasonable mind" could look at the record and make the same determination as the Commissioner. *See Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (defining substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion . . .") (internal citations omitted). Though the standard is deferential, "[s]ubstantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009) (internal quotation marks and citations omitted). When the decision is supported by substantial evidence, the Court defers to the Commissioner's judgment. "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [this Court] will not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).

The Commissioner's conclusions of law are not entitled to the same deference. The Court does not defer to the Commissioner's decision "[w]here an error of law has been made that might have affected the disposition of the case." *Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004) (internal quotation marks omitted). "Even if the Commissioner's decision is supported by substantial evidence, legal error alone can be enough to overturn the ALJ's decision." *Ellington v. Astrue*, 641 F. Supp. 2d 322, 328 (S.D.N.Y. 2009) (citing *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)).

If a decision is reversed because it contains legal error or is not supported by substantial evidence, the Court may "either remand for a new hearing or remand for the limited purpose of calculating benefits." *Henningsen v. Comm'r of Soc. Sec. Admin.*, 111 F. Supp. 3d 250, 263 (E.D.N.Y. 2015) (internal quotation marks omitted); *see also Tejada v. Apfel*, 167 F.3d 770, 776 (2d Cir. 1999) (remanding for rehearing but directing Commissioner "to calculate and dispense SSI benefits" if he could not bear his burden at Step Five). Remand for calculation of benefits is not appropriate when the record requires further development. "In deciding whether a remand is the proper remedy, we have stated that where the administrative record contains gaps, remand to the Commissioner for further development of the evidence is appropriate." *Butts v. Barnhart*, 388 F.3d 377, 385 (2d Cir. 2004), *as amended on reh'g in part*, 416 F.3d 101 (2d Cir. 2005). To award benefits, a district court must find that, irrespective of the legal error, the record contains "persuasive proof" of the claimant's disability and "a remand for further evidentiary proceedings would serve no purpose." *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980). A record contains "persuasive proof" of disability when there is "no apparent basis to conclude" that additional evidence "might support the Commissioner's decision." *Rosa v. Callahan,* 168 F.3d 72, 83 (2d Cir. 1999).

## II.  BACKGROUND

### A.  Facts and Procedural History

On June 20, 2016, the Plaintiff applied for Supplemental Security Income ("SSI") benefits. (R. 128.) On July 30, 2016, she applied for Social Security Disability Insurance ("SSDI") benefits. (R. 127.) Her initial applications alleged onset dates in March and December 2010. (R. 273, 280.) The Plaintiff claimed that she could not work because of depression, anxiety disorder, post-traumatic stress disorder, essential tremor, neck fusion, gastroesophageal reflux disease ("GERD")

and obesity.  (R. 335.)  The Social Security Administration ("SSA") denied her applications and subsequent requests for reconsideration.  (R. 166, 171, 178, 182.)  The Plaintiff then requested a hearing before an ALJ.  (R. 185.)

The Plaintiff's matter was heard by ALJ Alexander Peter Borré.  On March 29, 2018 the hearing briefly commenced, but was continued to allow the Plaintiff's attorney time to review the file.  (R. 89, 94-95.)  The hearing resumed on May 24, 2018.  (R. 51.)  During the hearing, the Plaintiff withdrew her SSDI application and amended the disability onset date to June 20, 2016.  (R. 53-54.)  On June 20, 2018, the ALJ delivered an unfavorable decision.  (R. 42.)  The Plaintiff then submitted an appeal to the Appeals Council.  (R. 268.)  The Appeals Council affirmed the ALJ's decision (R. 1-4) and the Plaintiff timely appealed to this Court.  She filed a motion to reverse and/or remand on October 14, 2019.  (ECF No. 15.)  The Commissioner filed his motion to affirm on December 16, 2019.  (ECF No. 17.)

Portions of the Plaintiff's medical history will be set forth below, as necessary to explain the Court's decision.

### B. The ALJ's Decision

At Step One, the ALJ found that the Plaintiff has not engaged in substantial gainful activity since the alleged onset date of June 20, 2016.  (R. 32.)  At Step Two, the ALJ found that she suffered from the severe impairments of cervical degenerative disc disease, essential tremor, major depressive disorder, post-traumatic stress disorder and obsessive-compulsive disorder.  (*Id.*)  The ALJ also found that the Plaintiff's GERD and alcohol abuse were "nonsevere" impairments that did not "result in more than minimal work related limitations."  (R. 32-33.)  At Step Three, the ALJ found that the Plaintiff's impairments or combination of impairments do not meet or equal a

listed disability enumerated in 20 C.F.R. § 404, Subpart P., App. 1. (R. 33.) Next, the ALJ

determined that the Plaintiff retained the following residual functional capacity:

> [T]o perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except no climbing of ladders, ropes or scaffolds; no exposure to hazards such as open, moving machinery and unprotected heights; occasional crawling; frequent climbing of ramps and stairs, frequent balancing, stooping, kneeling and crouching; occasional overhead reaching bilaterally; frequent fingering and handling bilaterally; and she is limited to simple, repetitive tasks; in an environment with occasional interactions with the public, coworkers, supervisors and no teamwork or collaborative tasks.

(R. 35, 35-40.)

At Step Four, the ALJ Found that the Plaintiff was capable of performing her past relevant

work as a baker's helper. (R. 41.) Accordingly, the ALJ determined that the Plaintiff was not

disabled from the alleged onset date of June 20, 2016. (*Id*.)

## III.   <u>DISCUSSION</u>

The Plaintiff argues that the ALJ erred in five ways: (1) failing to obtain opinion evidence

from her treating physicians; (2) failing to incorporate the opinions of state agency doctors to

whom the "greatest evidentiary weight" was assigned in the RFC determination; (3) leaving an

obvious gap in the record by failing to obtain certain medical records; (4) omitting "multiple

factors" from the RFC determination; and (5) failing to develop the vocational evidence. (ECF

No. 15-1, at 2.) For the following reasons, the Court finds that under the facts of this case, the

ALJ erred by not obtaining medical source opinions from the Plaintiff's treating providers. The

Court therefore reverses and remands the Commissioner's decision without addressing the

remaining arguments.

### A.   **The ALJ's Failure to Obtain Treating Source Opinions**

Where, as here, the claimant filed her claim before March 20, 2017, the Social Security

regulations ordinarily obliged the Commissioner to obtain opinion evidence from a claimant's

treating providers. "Indeed, the plain text of the regulation [in force before March 20, 2017] does not appear to be conditional or hortatory: it states that the Commissioner '*will* request a medical source statement' containing an opinion regarding the claimant's residual capacity." *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013) (summary order) (citing 20 C.F.R. §§ 404.1513(b)(6), 416.913(b)(6)).

Even so, failure to obtain opinion evidence from the claimant's treating providers does not necessarily invalidate the ALJ's decision. When the record "contains sufficient evidence from which an ALJ can assess the petitioner's residual functional capacity," *id*. at 34, the failure to obtain medical source opinion evidence is not "*per se* error." *Sanchez v. Colvin*, No. 13-CIV-6303 (PAE), 2015 WL 736102, at *5 (S.D.N.Y. Feb. 20, 2015); *see also Sinclair v. Saul*, No. 3:18-CV-00656 (RMS), 2019 WL 3284793, at *7 (D. Conn. Jul. 22, 2019) (same). Stated differently, when the ALJ possesses an "extensive medical record," the lack of medical opinion evidence does not automatically create an obvious gap in the record that "necessitate[s] remand." *Swiantek v. Comm'r of Soc. Sec.*, 588 F. App'x 82, 84 (2d Cir. 2015) (summary order).[1]

A medical record that lacks a treating source opinion can nevertheless be "sufficient" when its other evidence permits an assessment of the claimant's impairments and residual functional capacity. "The critical point" is that the claimant's medical records must contain "the sorts of nuanced descriptions and assessments that would permit an outside reviewer to thoughtfully consider the extent and nature" of her impairments and "their impact on her RFC." *Sanchez*, 2015 WL 736102 at *8. When the medical records discuss only the claimant's illnesses and how to treat them, without offering "insight into how her impairments affect or do not affect her ability to

---

[1]     Additionally, an ALJ's "conclusions would not be defective" when she requests opinions from a claimant's treating providers and those sources "refused." *Tankisi*, 521 F. App'x at 33-34.

work, or her ability to undertake her activities of everyday life," the ALJ's duty to request a medical source statement is ordinarily triggered. *Guillen v. Berryhill*, 697 F. App'x 107, 109 (2d Cir. 2017) (summary order).

The question presented here is whether the record contains evidence "sufficient" to excuse the absence of opinions from the claimant's treating physicians. In other words, the Court must assess "whether, given the specific facts of this case, the administrative record before the ALJ . . . although lacking the opinion of [a] treating physician, was sufficiently comprehensive to permit an informed finding by the ALJ." *Sanchez*, 2015 WL 736102, at *6 (internal quotation marks and citation omitted). This question "focuses on circumstances of the particular case, the comprehensiveness of the administrative record, and, at core, whether an ALJ could reach an informed decision based on the record." *Id.* at *5 (citing *Tankisi*, 521 F. App'x. at 33); *see also Moreau v. Berryhill*, No. 3:17-CV-00396 (JCH), 2018 WL 1316197, at *7 (D. Conn. Mar. 14, 2018).

In this case, the Plaintiff argues that the ALJ failed to develop the record by not obtaining "any opinion evidence" from her "many own doctors" including "mental health treatment providers or neurologists." (ECF No. 15-1, at 11.) The Commissioner does not dispute that the ALJ failed to obtain this evidence, nor does he claim that the claimant's treating providers "refused" the few requests that had been made by a state agency.[2] Instead, he argues that the "record before the ALJ" was otherwise "more than adequate," and references opinion evidence by

---

[2] The State of Connecticut's Bureau of Rehabilitation Services sought medical source statements from the Plaintiff's neurologist (R. 510) and principal mental health provider. (R. 733-36.) So far as the record discloses, neither one responded. While the lack of a treating source opinion can be excused if the ALJ "requested opinions from medical sources and the medical sources refused," *Tankisi*, 521 F. App'x at 33-34, in this case the Commissioner does not argue that the Plaintiff's treating providers "refused" to provide opinions within the meaning of *Tankisi*.

consulting and non-consulting state agency physicians.  (ECF No. 17, at 9.)  The Court agrees with the Plaintiff that, under the facts of this case, the ALJ should have sought opinions from her treating providers with respect to her physical and mental impairments.

### i.  Physical Impairments

As applied to this case, the legal principles in *Tankisi* and *Guillen* support the Plaintiff's argument that the ALJ was required to obtain opinion evidence from her treating providers.  After acknowledging that the administrative record did not include opinions from "providers who provided work related limitations," the ALJ explained that his RFC determination was supported by: (1) underlying medical treatment notes; (2) opinions of non-examining state agency consultants; and (3) the Plaintiff's testimony and other reports as to her activities of daily living. (R. 39.)  There is no evidence in the record that the ALJ attempted to obtain any medical opinions in connection with the physical RFC determination.  The "specific facts of this case," however, do not support the conclusion that the administrative record—including the medical records, non-examining opinions and activities of daily living—was "sufficiently comprehensive to permit an informed finding by the ALJ."  *Sanchez*, 2015 WL 736102, at *6 (internal quotations omitted).

### a.  Medical Records

The records of the plaintiff's physical maladies are not "voluminous." *Tankisi*, 521 F. App'x at 34.  Although there are nearly 1,000 total pages of medical records (R. 406-1382), only a small portion of these records contain substantive medical data related to her physical impairments.  This distinction is significant because the record may seem extensive on a "superficial level," however, the "real import lies in *what* those 1,000 pages say, not the mere fact the records exist."  *Holt v. Colvin*, No. 3:16-CV-01971 (VLB), 2018 WL 1293095, at *7 (D. Conn. Mar. 13, 2018).  For example, there are more than 700 pages of records from Catholic Charites,

where the Plaintiff received mental health treatment.[3]  (R. 446-494, 688-736, 737-930, 931-1043,

1052-1166, 1167-1382.)  There are so many pages of records from Catholic Charities because the

notes from each individual or group therapy session also contain a chronologically progressive list

of each of the Plaintiff's prior sessions.  (*See*, *e.g.*, R. 1140-1150) (eleven pages of records for one

individual therapy session, only four of which contain substantive information related to that visit).

Very little information, if any, can be gleaned from these records relating to the Plaintiff's physical

impairments.

Records from the Plaintiff's other medical providers[4] are also not as extensive as they

might appear on a "superficial level."  *Holt*, 2018 WL 1293095, at *7.  There are many duplicative

records and treatment notes from immaterial medical visits long before the relevant time period.

In sum, the medical records are not sufficiently "voluminous" as contemplated by the Second

Circuit in *Tankisi*.  *Compare Duffy v. Comm'r of Soc. Sec.*, No. 17-CV-3560 (GHW) (RWL), 2018

WL 4376414, at *10 (S.D.N.Y. Aug. 24, 2018), *rep. and recommendation adopted,* No. 1:17-CV-

3560 (GHW), 2018 WL 4373997 (S.D.N.Y. Sept. 13, 2018) ("At four hundred and forty

five pages, the record is relatively scant, and there is nothing in the treating notes setting forth

Duffy's ability to function in a work setting.") *with Sena v. Berryhill*, No. 3:17-CV-0912 (MPS),

2018 WL 3854771, at *14 (D. Conn. Aug. 14, 2018) (lack of opinion from treating physician

---

[3]      These records are considered in this discussion, despite that they relate to mental health treatment, because they may nevertheless contain information related to the Plaintiff's physical impairments.

[4]      These records are primarily from the Plaintiff's primary care physician, Dr. Franco Gallaso (R. 620-637, 638-647, 1044-1051), her neurologist, Dr. Jianhui Zhang (R. 15-25, 495-512, 668-677), her OBGYN, Dr. Eleanor A. Berry (R. 524-599) and gastroenterologist specialists related to GERD treatment (R. 513-523, 600-619).

excused because 1,432-page record otherwise contained "ample information upon which to base the RFC determination").

Far more important than the page count is the fact that the Plaintiff's medical records do not illuminate how her physical impairments affect her "ability to work, or her ability to undertake her activities of everyday life." *Guillen*, 697 F. App'x at 109. Take, for example, her diagnosis of essential tremor. "Essential tremor" is "a common, usually familial disorder of movement that is characterized by involuntary rhythmic trembling of the hands, arms, and face usually with nodding of the head and tremulousness of voice that is exacerbated by anxiety and by activity. . . ." *Essential Tremor*, Merriam-Webster Medical Dict., https://www.merriam-webster.com/medical/essential%20tremor (last visited Aug. 12, 2020). The Plaintiff's medical record contains 29 pages of treatment records from her neurologist, Dr. Jianhui Zhang,[5] discussing the diagnosis and the course of medication he prescribed for it. But the notes contain no data on the degree to which the tremor would interfere with her ability to do a particular job. They say,

---

[5]     The Plaintiff began treatment with Dr. Zhang in May 2015 (R. 325), continuing through the benefits hearing.  (*See* R. 61) (testimony that the Plaintiff saw her neurologist the morning of the hearing).  The record before the ALJ contained treatment notes from six visits with Dr. Zhang from 2015 and 2016.  (R. 495-508, 668-673).  The Plaintiff submitted records to the Appeals Council (R. 13) from three additional visits with Dr. Zhang in 2017 and 2018 (R. 15-25).

        The additional records submitted to the Appeals Council form a separate basis for appeal. Specifically, the Plaintiff argues that the ALJ failed to develop the record by not obtaining "treatment notes from [her] neurologist" resulting in "nearly two years" of missing medical evidence.  (ECF No. 15-1, at 10.)  This argument is largely moot because on remand, the ALJ will have the records provided to the Appeals Council.  To the extent there are additional records from the relevant period, such as from the Plaintiff's visit on May 24, 2018 (R. 61), the ALJ should also attempt to obtain these records when soliciting the opinion from Dr. Zhang.  For purposes of the discussion in this section, however, the Court is permitted to consider the additional records as part of the entire administrative record. *See Perez v. Chater*, 77 F.3d 41, 45 (2d Cir. 1996) ("[W]e hold that the new evidence submitted to the Appeals Council following the ALJ's decision becomes part of the administrative record for judicial review when the Appeals Council denies review of the ALJ's decision.").

for example, that the Plaintiff's hands "shak[e] . . . when she is reaching for a cup or writing," but they do not say how often or how violently.  (R. 498.)  They report that medication "is helping" (R. 501), and that the tremor was "much better" after she was switched from one medication to another (R. 506)—but they do not say whether, after administration of that medication, the Plaintiff has the residual capacity to do any particular task.  In short, none of these records contain any statements that might be construed as assessments of the Plaintiff's functional or work-related limitations resulting from her physical impairments.

The lack of substantive records about the Plaintiff's functional limitations is particularly apparent when considering the ALJ's RFC determination.  For example, the ALJ determined that the Plaintiff was able to perform "light work"—which requires, among other things, "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. § 416.967(b).  None of the Plaintiff's treating providers made any such assessment, nor is such information contained in the medical records.  *See Cote v. Berryhill*, No. 3:17-CV-095 (WWE), 2018 WL 1225543, at *4  (D. Conn. Mar. 9, 2018) ("Although the medical record is lengthy, plaintiff's capacity to engage in light work employment is not resolved by the treatment notes."); *Blackert v. Berryhill*, No. 3:16-CV-1327 (JCH), 2017 WL 3168580, at *6 (D. Conn. Jul. 26, 2017) (holding that, in the in the absence of a treating physician opinion, the record did not contain substantial evidence that the plaintiff could satisfy lifting requirements of "medium work").  Here, the only evidence directly related to the Plaintiff's ability to lift, was her testimony during the benefits hearing that she cannot lift more than 10 pounds and has difficulty lifting in general because of her tremor and cervical spine impairment.  (R. 63, 70-71, 76.)

Accordingly, the Court concludes that in the absence of functional assessments by the Plaintiff's treating providers, her medical records are not "sufficiently comprehensive to permit an informed finding by the ALJ." *Sanchez*, 2015 WL 736102, at *6 (internal quotations omitted).

### b. Non-Examining State Agency Consultants

When the record "do[es] not shed any light" on a claimant's RFC, the opinion of a non-examining state agency consultant is ordinarily not a sufficient substitute for the opinion of the claimant's treating provider. *Guillen*, 697 F. App'x. at 108-09 (remand required where "the medical records obtained by the ALJ [did] not shed any light on Guillen's residual functional capacity, and the consulting doctors did not personally evaluate Guillen"); *see also Card v. Berryhill*, No. 3:18-CV-1060 (AWT), 2019 WL 4438322, at *4 (D. Conn. Sept. 16, 2019) (same). Stated differently, opinions by non-examining consultants cannot fill the gap created by the absence of treating physician opinions when the medical records "do[] not provide a sufficient basis" to determine a claimant's RFC. *Borelli v. Berryhill*, No. 3:18-CV-0801 (VLB), 2019 WL 4233586, at *13 (D. Conn. Sept. 6, 2019). Courts have held that "[r]emand is . . . necessary" under these circumstances. *Martinez v. Berryhill*, No. 3:17-CV-0843 (SRU), 2019 WL 1199393, at *11 (D. Conn. Mar. 14, 2019).

In this case, the ALJ placed "great weight" on the opinions of non-examining state agency physicians to support his RFC determination. (R. 40.) Yet the underlying medical records did not "shed any light" onto the Plaintiff's functional and work-related limitations. *Guillen*, 697 F. App'x. at 108-09. Therefore, these opinions do not constitute "sufficient evidence from which an ALJ can assess the [Plaintiff's] residual functional capacity." *Tankisi*, 521 F. App'x at 34; *see Dowling v. Saul*, No. 3:19-CV-01170 (WIG), 2020 WL 2079113, at *5 (D. Conn. Apr. 30, 2020) ("The ALJ's reliance on the assessment by the State Agency physicians is problematic because

there is *no* medical opinion from a treating physician and/or specialist addressing the functional limitations that flow from Plaintiff's physical impairments to support the ALJ's physical RFC findings."); *Byrne v. Berryhill*, No. 3:19-CV-0066 (RAR), 2020 WL 373076, at *4 (D. Conn. Jan. 23, 2020) (same); *Card*, 2019 WL 4438322, at *4 (remanding where medical records did not shed light into RFC and ALJ "only refers to the opinions of nonexamining state agency physicians"); *Alamo v. Berryhill*, No. 3:18-CV-00210 (JCH), 2019 WL 4164759, at *6–8 (D. Conn. Sept. 3, 2019) (finding that ALJ failed to develop the record by not obtaining treating physician opinion "notwithstanding" opinions by examining and non-examining consultants and further, that medical records and consulting opinions were insufficient to support "light work" determination).[6]

### c.  Activities of Daily Living

The Commissioner evidently contends that the evidentiary gap can be filled by the Plaintiff's own statements about her activities of daily living (ECF No. 17, at 7), but that argument is unpersuasive under the facts of this case.  In formulating an RFC, the ALJ is of course entitled to consider "descriptions and observations" made by a claimant about her own limitations.  20 C.F.R. § 416.945(a)(3).  Reports of these daily activities, however, must "offer insight on how plaintiff's impairments affect her ability to work and undertake activities of daily life."  *Compare Keovilay v. Berryhill*, No. 3:19-CV-0735 (RAR), 2020 WL 3989567, at *4-5 (D. Conn. Jul. 15, 2020) (affirming ALJ's RFC determination, which was based on opinions by examining and non-examining consultants as well as Plaintiff's statements that she "walks her dog for up to an hour in the morning and an hour at night, walks three to four times a week, performed household chores,

---

[6]     It is worth noting that the only examining source whose opinion the ALJ relied upon— consulting psychologist Dr. Mark Kaplan—referenced the Plaintiff's "very significant medical history" and recommended that she be "evaluated by a physician to determine the nature and extent of her problems and how it impacts her ability to be employed."  (R. 663.) !

and cared for her boyfriend's disabled mother") *with Newton v. Berryhill*, No. 3:18-CV-1244 (MPS), 2019 WL 4686594, at *4 (D. Conn. Sept. 26, 2019) (finding that plaintiff's activities of "self-care," trying to "help out with his grandson," driving his "grandson to work a few times a week," and "prepar[ing] light meals, sweep[ing], and go[ing] for short walks" did not "constitute substantial evidence that his functional abilities are in excess of those alleged, and in any event do not support specific findings that he can" engage in light work) *and Blackert*, 2017 WL 3168580, at *7 (finding that "a trip to Florida, going out to dinner, going camping with her boyfriend once, exercising, and completing chores" was of "little probative value without knowing more details about the activities" because "while these activities may indicate that [the plaintiff] is capable of some degree of physical exertion, they say almost nothing about her capacity to perform medium work").

The ALJ based his physical RFC determination in part upon the Plaintiff's "admi[ssions] to activities such as cooking for large events and cleaning/organizing her home" (R. 40), but these activities do not confirm that the Plaintiff can work up to the level of the RFC. The ALJ found that the Plaintiff's RFC included the "capacity to perform light work as defined in 20 CFR 404.1567(b)," subject to several qualifications (R. 35), but "[l]ight work involves lifting [up to] 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). Without additional information, nothing about the Plaintiff's "cooking for large events and cleaning/organizing her home" supports the conclusion that she can lift twenty pounds and frequently lift and carry ten. In this respect, the ALJ's discussion of the Plaintiff's activities of daily living is similar to the administrative law judges' discussions in *Newton* and *Blackert*— they do not speak to the Plaintiff's capacity to perform "light work" or the functional limitations caused by her physical impairments.

15

### d. Conclusion

Accordingly, the Court concludes that the Plaintiff's medical records, her activities of daily living and the opinions by the non-examining state agency consultants do not constitute "sufficient evidence from which" the ALJ could determine her RFC such that opinions from her treating providers were unnecessary. *Tankisi*, 521 F. App'x at 34. Remand is therefore warranted. *See Dowling*, 2020 WL 2079113, at *7 ("Because there is <u>no</u> medical source opinion or functional assessment supporting the ALJ's finding that [the claimant] can perform light work with limitations, the Court concludes that the RFC determination is without substantial support in the record and a remand for further administrative proceedings is appropriate."); *Delgado v. Berryhill*, No. 3:17-CV-0054 (JCH), 2018 WL 1316198, at *7-10 (D. Conn. Mar. 14, 2018).

The ALJ "should develop the record as necessary to obtain opinions as to the Plaintiff's functional limitations from her treating and/or examining sources, obtain a consultative physical examination and/or a medical expert review, and/or obtain a functional capacity evaluation, and thoroughly explain his findings in accordance with the regulations." *Dowling*, 2020 WL 2079113, at *7; *see also Martin v. Berryhill,* No. 16-CV-6184 (FPG), 2017 WL 1313837, at *4 (W.D.N.Y. Apr. 10, 2017) ("There were many avenues available to the ALJ to fill the gap . . . ."). The Commissioner on remand "should employ whichever of these methods are appropriate to fully develop the record as to [the Plaintiff's] RFC." *Dowling*, 2020 WL 2079113, at *7.

### ii. Mental Health Impairments

The same principles guide the Court's analysis with respect to the necessity for mental health opinions. However, there are two significant differences between the ALJ's physical and mental RFC determinations. First, the Plaintiff's mental impairments were actually evaluated by a consulting examiner, Dr. Mark Kaplan. (R. 662-667.) Second, the mental health records from

Catholic Charities contain more information than do the records related to her physical impairments. Despite these differences, the Court concludes that they do not provide "sufficient evidence from which" the ALJ could determine the Plaintiff's mental RFC. *Tankisi*, 521 F. App'x at 34.

As a starting point, the "duty to develop the record is particularly important where an applicant alleges [she] is suffering from a mental illness" because of the "difficulty in determining whether these individuals will be able to adapt to the demands or stress of the workplace." *Caruso v. Saul*, No. 3:18-CV-1913 (RMS), 2019 WL 5853527, at *5 (D. Conn. Nov. 8, 2019) (internal quotation marks omitted). Therefore, "[t]he mandate of the treating physician rule to give greater weight to the opinions of doctors who have a relationship with a plaintiff is particularly important in the mental health context." *Urena v. Berryhill*, No. 18-CV-3645 (JLC), 2019 WL 1748131, at *14 (S.D.N.Y. Apr. 19, 2019) (internal quotation marks omitted).

Additionally, the Second Circuit has "cautioned that ALJs should not rely heavily on the findings of consultative physicians after a single examination." *Selian v. Astrue*, 708 F.3d 409, 419 (2d Cir. 2013) (per curiam). This "concern is even more pronounced in the context of mental illness" because a "one-time snapshot of a claimant's status may not be indicative of her longitudinal mental health." *Estrella v. Berryhill*, 925 F.3d 90, 98 (2d Cir. 2019). Therefore, consultative reports "should be given limited weight." *Cruz v. Sullivan*, 912 F.2d 8, 13 (2d Cir. 1990). "This is justified because consultative exams are often brief, are generally performed without benefit or review of claimant's medical history and, at best, only give a glimpse of the claimant on a single day." *Id.* (internal quotation marks omitted). This is particularly true where, as here, the consultative examiner does not review the underlying medical records. *Id.*; *see also Swiantek*, 588 F. App'x. at 84 ("The ALJ in this case based his findings on the psychiatric

evaluation of a consultative psychologist who personally examined [the claimant] as well as [the claimant's] complete medical history and treatment notes, which themselves contained multiple psychological assessments of [the claimant].").

In this case, the ALJ "accounted for" the Plaintiff's mental impairments by "limiting her to simple, repetitive tasks in an environment with occasional interactions with the public, coworkers, supervisors and no teamwork or collaborative tasks." (R. 39.)  In arriving at the mental RFC, the ALJ gave "great weight" to the opinions of Dr. Kaplan.  (R. 39-40.)  Strong reliance on this sort of opinion, however, is precisely what the Second Circuit has cautioned against.  *Estrella*, 925 F.3d at 98.  Additionally, Dr. Kaplan did not review any of the Plaintiff's medical records, except for her disability application.  (R. 662) ("DD application was the only record" Dr. Kaplan reviewed).  And while he included a "Functional Information" section in his report, that section related principally to "Activities of Daily Living" and contained only a single sentence about the impact of her mental impairments on her ability to work.  (R. 665) ("She is quite emotionally labile at this time and while she might be able to attend a work like setting initially if she saw the importance of it; however, she could not sustain this and would isolate herself very quickly.").  The "Functional Assessment" section likewise contained no discussion specifically related to the Plaintiff's ability to work, let alone of her ability to do "repetitive" work "in an environment with occasional interactions with the public, coworkers [and] supervisors" as claimed in the RFC.  (R. 666, 35.)  In summary, the Court concludes that Dr. Kaplan's evaluation did not obviate the need for opinions from the Plaintiff's treating providers.

The treatment records from Catholic Charities likewise fail to provide a sufficient basis to support the mental RFC determination.  The notes from each individual and group therapy session generally contain a "mental status/clinical status" evaluation by the individual provider.  (*See*, *e.g.*,

R. 755, 762, 769, 776, 939, 948, 957.)  These assessments contain the provider's evaluations of, among other things, the Plaintiff's attitude, affect, mood, speech, thought process and content, memory, orientation, judgment, and insight.  (*Id*.)  The notes then contain brief summaries of the content of the therapy session, including descriptions of the Plaintiff's current mental health concerns and the providers' recommendations and action plans.  (*See*, *e.g.*, R. 756, 763, 770, 777, 940, 949, 958.)  While this sort of raw data is "certainly probative of [a claimant's] mental RFC," *Richardson v. Berryhill*, No. 3:18-CV-00448 (KAD), 2019 WL 4764834, at *6 (D. Conn. Sept. 30, 2019), it is nevertheless raw data.  Without more, such data does not provide a sufficient basis for assessing a claimant's "mental ability to perform work."  *Caruso*, 2019 WL 5853527, at *7. To be sure, the Catholic Charities notes document episodes of improvement as well as decline in the Plaintiff's mental health (R. 36-39), but in such cases the "necessity of a medical source statement [is] all the more apparent."  Caruso, 2019 WL 5853527, at *7.

Accordingly, the Court concludes that the record did not contain "sufficient evidence from which an ALJ can assess the petitioner's residual functional capacity" with respect to the Plaintiff's mental impairments as well as her physical impairments.  *Tankisi*, 521 F. App'x at 34; *Sanchez*, 2015 WL 736102, at *5.  On remand, the ALJ shall seek the opinions of the Plaintiff's treating provider(s) at Catholic Charities.

### B.  Remaining Arguments

Because the Court is remanding this matter for further development of the record, it does not reach the Plaintiff's remaining arguments.  "The issue of whether an ALJ has satisfied his obligation to develop the record is one that must be addressed as a threshold issue." *Camarota v. Comm'r of Soc. Sec.*, No. 3:19-CV-0133 (RMS), 2020 WL 132437, at *5 (D. Conn. Jan. 13, 2020) (internal quotation marks omitted).  The Court declines to address the plaintiff's remaining

arguments because "upon remand and after a *de novo* hearing, [the ALJ] shall review this matter in its entirety." *Faussett v. Saul*, No. 3:18-CV-738 (MPS), 2020 WL 57537, at *5 (D. Conn. Jan. 6, 2020) (internal quotation marks omitted); *see also Delgado*, 2018 WL 1316198, at *19 (holding that because the case is "already being remanded for other reasons," and "because [the Plaintiff's] RFC may change after full development of the record," the ALJ is likely to need to reconsider the other steps in the five-step analysis).

On remand, and after further development of the record and a new hearing, the ALJ shall consider the other claims of error not discussed in this decision. *Pacheco v. Saul*, No. 3:19-CV-00987 (WIG), 2020 WL 113702, at *8 (D. Conn. Jan. 10, 2020) ("On remand, the Commissioner will address the other claims of error not discussed herein."); *see also Moreau*, 2018 WL 1316197, at *4 ("Because the court finds that the ALJ failed to develop the record, it also suggests that the ALJ revisit the other issues on remand, without finding it necessary to reach whether such arguments would themselves constitute legal error justifying remand on their own.").

## IV.   <u>CONCLUSION</u>

If a decision is reversed because it contains legal error or is not supported by substantial evidence, the Court may "remand for a new hearing or remand for the limited purpose of calculating benefits." *Henningsen*, 111 F. Supp. 3d at 263 (internal quotation marks omitted). However, remand for calculation of benefits is not appropriate when the record requires further development. "In deciding whether a remand is the proper remedy, [the Second Circuit has] stated that where the administrative record contains gaps, remand to the Commissioner for further development of the evidence is appropriate." *Butts*, 388 F.3d at 385. In this case, the Court has determined that the matter should be remanded to the Commissioner for further development of the record. Therefore, an order for the calculation of benefits is not appropriate.

For the reasons stated, the Plaintiff's motion to reverse with an order for an award and calculation of benefits is **DENIED**, but her alternative motion to reverse and remand for a new hearing is **GRANTED**.  The Commissioner's motion to affirm is **DENIED**.  The Commissioner's decision is **VACATED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for proceedings consistent with this decision.  In light of the Court's holdings, it need not reach the merits of the Plaintiff's other arguments.  Therefore, this matter is remanded to the Commissioner for further administrative proceedings consistent with this opinion.  On remand, the Commissioner shall address the other claims of error not discussed herein.

This is not a recommended ruling.  The consent of the parties allows this magistrate judge to direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure.  Appeals can be made directly to the appropriate United States Court of Appeals from this judgment.  *See* 28 U.S.C. § 636(c)(3); Fed. R. Civ. P. 73(c).  The Clerk is directed to enter judgment in favor of the Plaintiff and close this case.  The Clerk is further instructed that, if any party appeals to this Court the decision made after this remand, any subsequent Social Security appeal is to be assigned to the undersigned.

It is so ordered.

*/s/ Thomas O. Farrish*
Hon. Thomas O. Farrish
United States Magistrate Judge